# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 4, 2000 Session

## JAMES W. HUNTER v. SHIRLEY C. HUNTER

**Appeal from the Chancery Court for Grainger County**
No. 98-096      Telford E. Forgety, Jr., Judge

**FILED NOVEMBER 30, 2000**

**No. E2000-00662-COA-R3-CV**

In this divorce case, Shirley C. Hunter ("Wife") appeals, arguing that the trial court erred (1) in classifying and dividing the parties' property; (2) in refusing to find James W. Hunter ("Husband") in contempt for failing to pay Wife's medical bills; (3) in restricting Wife's spousal support award to one of alimony *in solido* of $7,200; (4) in awarding Husband a judgment against Wife for $5,068.53 in connection with Wife's use of his vehicle; and (5) in failing to award Wife her attorney's fees. We vacate the trial court's judgment ordering Wife to pay for her use of Husband's vehicle. In all other respects, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Patti Jane Lay and Jennifer Bjornstad, Knoxville, Tennessee, for the appellant, Shirley C. Hunter.

Creed A. Daniel, Rutledge, Tennessee, for the appellee, James W. Hunter.

## OPINION

I. *General Overview*

Husband filed a complaint for divorce on September 8, 1998, seeking to end a marriage of a little over seven years. It was the second marriage for each of the parties. At the time of trial, Husband was 58 and Wife was 54. There were no minor children at the time of the divorce.[1]

---

[1]Husband had adopted Wife's child from her first marriage. However, that child reached the age of majority prior to the commencement of this proceeding.

Following the filing of Husband's complaint, Wife filed a motion seeking *pendente lite* support and sole possession of the marital residence. Husband responded by filing a motion also seeking possession of the marital residence. He alleged that the property, which included an attached office for his construction business, was his separate property. In an order entered November 19, 1998, the trial court directed Husband to pay temporary spousal support of $700 per month; to maintain medical insurance on Wife and to pay her "reasonable and necessary medical expenses not covered by insurance"; and to provide Wife with a vehicle. The court awarded Husband possession of the marital residence. Wife was ordered to vacate the house within 15 days.

In January, 1999, Wife filed a petition for contempt, alleging that Husband had ceased to provide her with a vehicle. Husband filed a counterclaim for contempt, alleging that, in the course of vacating the marital residence, Wife had "ransacked the house and trashed it" and had removed several items of Husband's personal property. Husband further alleged in his petition that Wife had chosen to have "expensive, elective knee surgery" so Husband would have to pay for it. A hearing was held on Wife's petition for contempt on February 26, 1999. The court found that Husband had failed to provide Wife with a vehicle as previously ordered. It held that "Wife shall have the use of parties' 1996 Chevy Silverado Truck pending further order of the court." The court reserved the issue of contempt.

On June 30, 1999, the trial court heard the issues raised in the divorce complaint and the parties' contempt petitions. As further discussed later in this opinion, the trial court awarded Wife an interest in the appreciation in value of Husband's separate property; divided the other marital property; and awarded Wife alimony *in solido* of $7,200, payable at a rate of $400 per month for 18 months. In the course of classifying and dividing the parties' property, the trial court found that the 1996 Chevrolet truck, which had been made available for Wife's use, was Husband's separate property. The order, however, makes no provision for the return of the vehicle to Husband. Regarding the contempt petitions, the court concluded that each party was guilty of at least some of the acts alleged. The court, however, did not make a finding of willful contempt and, accordingly, denied all relief on these competing petitions. The court determined that each party should pay his or her own attorney's fees.

Following the entry of the trial court's "Memorandum and Order" on July 13, 1999, Wife filed a motion to alter or amend or, in the alternative, for a new trial. While that motion was pending, Husband filed a petition for contempt on October 13, 1999, in which he alleged, in pertinent part, as follows:

> That the husband was awarded the 1997 Chevrolet one-ton truck and the 1996 pick-up truck [as] assets of his construction business and thus the husband's separate property. That by order of this court the wife was given the [1996 pick-up] truck pending hearing of this matter. That the wife...was ordered to return said property in previous hearing, however, she has refused to return the vehicle and husband has been advised that the vehicle was taken outside the State of

Tennessee. That as result thereof he has had to lease truck for his business and incurred lease payment and expenses all because of the wife's failure to return said vehicle.

In an order entered October 18, 1999, the trial court denied Wife's motion to alter or amend and ordered that "Husband and Wife shall mutually schedule a date as soon as possible for the exchange of property awarded to each of the parties upon this order becoming final." Following a hearing on November 4, 1999, the parties were ordered to meet on November 29, 1999, "for exchange of truck, any funds and personal property." Husband was ordered to pay into court any monies that he claimed as a setoff to monies owed to Wife as a result of the divorce judgment. Subsequent to this hearing, Wife filed a motion seeking an award of post-judgment interest.

A hearing was held on December 2, 1999, to address Wife's motion for post-judgment interest and Husband's claim of a setoff. The trial court awarded Wife post-judgment interest of $190.42. It further held that Husband was entitled to a setoff of $5,258.95, representing $393.95 for damage to the truck while in Wife's possession and $4,865 for the rental value of the truck, calculated at $35 per day for 139 days. After deducting the amount that Wife was awarded as post-judgment interest, the court determined that Husband was entitled to a net setoff of $5,068.53 in connection with Wife's use of his vehicle after entry of the divorce judgment. This appeal followed.

## II. *General Principles*

In divorce cases, Tennessee recognizes two distinct classes of property: (1) "marital property", as defined in T.C.A. § 36-4-121(b)(1) (1996); and (2) "separate property", as defined in T.C.A. § 36-4-121(b)(2) (1996). In an action for divorce, only marital property is divided between the parties. *See* T.C.A. § 36-4-121(a)(1) (1996). Implicit in the statute is the concept that separate property is awarded to the party to whom it belongs. ***Brock v. Brock,*** 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996).

Generally, property that is acquired during the marriage by either or both of the spouses and still owned by either or both when the divorce is granted is classified as marital property and subject to equitable division between them. T.C.A. § 36-4-121(b)(1). Marital property includes the increase in value of separate property "if each party substantially contributed to its preservation and appreciation." ***Ellis v. Ellis,*** 748 S.W.2d 424, 426-27 (Tenn. 1988).

Property should be equitably divided between the parties once it is properly classified as marital. *See* T.C.A. § 36-4-121(a)(1). "Trial courts have wide latitude in fashioning an equitable division of marital property." ***Brown v. Brown,*** 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). This must be done after consideration of the statutory factors set forth in T.C.A. § 36-4-121(c). Marital fault cannot be considered. T.C.A. § 36-4-121(a)(1).

"[A]n equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most

relevant factors in light of the unique facts of the case." ***Batson v. Batson,*** 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). "In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." ***Id.*** In dividing the assets of the marital estate, it is not necessary that both parties receive a share of each piece of property. ***Thompson v. Thompson,*** 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Appellate courts are to defer to a trial court's division of marital property unless that court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. ***Brown,*** 913 S.W.2d at 168.

The value to be placed on a marital asset is a question of fact. ***Kinard v. Kinard,*** 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). In making this determination, the trial court is to consider all relevant evidence, and, if the evidence is conflicting, the court "may assign a value that is within the range of values supported by the evidence." ***Id.*** An appellate court is to presume a trial court's factual determinations are correct unless the evidence preponderates against them. ***Id.***

III. *Property Issues*

A. The Trial Court's Findings

The parties resided in a house that Husband owned prior to the marriage. Husband, who worked as a general contractor, maintained his office on the property. In addition to being a contractor, Husband owned several income-producing properties, including two rental houses and two commercial properties. In one of these commercial properties, Husband operated a beer store. He leased the other commercial property to various businesses.

In its Memorandum and Order, the trial court began by addressing Wife's claim to an interest in the appreciation in value of Husband's separate property, consisting of the income-producing property referred to above, as well as the marital residence and 23 acres of undeveloped land. The court noted that all of these properties were unencumbered – with the exception of an outstanding mortgage of $39,500 on the beer store property, the result of a refinancing that occurred during the marriage and for which both Husband and Wife were obligated. The court found that the parties were should be jointly responsible for the debt even though the property remained Husband's separate property. The court burdened Husband with the entire balance of the mortgage debt but held that Wife's share of this joint debt, $19,750, would be considered in calculating her share of the appreciation in value of Husband's separate property.

The court proceeded to review the evidence regarding the increase in value of Husband's separate real property. Husband testified that his separate real property was worth $136,000 at the time of the parties' marriage. He opined that at the time of the divorce the property had increased in value by $21,000. Wife presented the testimony of an appraiser, who opined that Husband's separate real property was worth $235,000 at the time of the marriage and had increased in value by $76,000 during the marriage. The trial court accepted Husband's figures, stating as follows:

> The Court is not entirely satisfied with the Wife's evidence as to the appreciation of these properties, even though she presented the testimony of an appraiser. For example, the appraiser testified that he knew nothing about the condition of these properties at the time of the marriage. Rather, he used general trends to arrive at a 1991 value. In addition, the appraiser testified that all property in Grainger County had been reappraised by the County Property Assessor within the last 30 days. And, that office appraised the primary residence, the residential rental house, and the 23 acres...together at $94,500.00. The Wife's appraiser felt these properties were together worth $136,000.00. Thus, on these parcels, the Wife's appraiser is 44% higher than the County's new appraisal.

The trial court found that Husband's construction business and all related tools, equipment, and supplies, were his separate property. Although the court did not make an explicit finding as to the value of the construction business, Husband's financial statements reflect an approximate net value in 1998 of $394,000. The court found that the assets of the business included items claimed by Wife to be marital property, including several tools, a word processor, a camera and video equipment, office furniture and equipment, and building materials. The court also found that the Merrill Lynch account, claimed by Wife to be marital property, was Husband's separate property. The court noted that while the parties were separated, Wife removed $6,000 from this account. While declining to require Wife to repay these funds, the court determined that her withdrawal would be considered in calculating Wife's interest in the appreciation in value of Husband's separate property. The court further found that the 1997 Chevrolet one-ton truck and the 1996 Chevrolet Silverado truck were assets of the construction business and thus Husband's separate property.

Next, the trial court addressed the appreciation in value of Husband's construction business during the marriage. The court noted that Husband's financial statements in the record from the years 1989 and 1998 reflected an increase in value of $30,000 over nine years. The court found, however, that because there was no evidence of the business' financial status at the time of the parties' marriage in 1991, the evidence failed to establish the amount the business had appreciated during the marriage.

After accounting for Wife's withdrawal of $6,000 from the Merrill Lynch account as well as her share of the obligation represented by the beer store mortgage, the court awarded Wife $5,000 for her interest in the appreciation in value of Husband's separate property.

The trial court also found that several items that Wife claimed to be marital property, were, in fact, the separate property of Husband. The court found that an account at Citizens Bank, containing $4,000, was the business account of the beer store and thus constituted Husband's separate property. It further found that a gun safe, which had been purchased by Husband with funds inherited from his father, was Husband's separate property. The court found that the bulk of the gun collection claimed by Wife to be marital property had been purchased by Husband prior to the

marriage. It did find, however, that three guns – a Ruger .22 caliber carbine and two Smith & Wesson 9 mm pistols – were purchased during the marriage. Without assessing any values, the court awarded Husband the Ruger and Wife the two Smith & Wesson pistols.

Next, the trial court addressed the issue of marital property. During the marriage, Husband and Wife acquired 13 acres of land and a timeshare in a condominium located in Pigeon Forge ("the Oakmont timeshare"). They also acquired various items of personal property, including exercise equipment, a television, a computer, and four horses.[2] The court assessed the value of this property, excluding certain items of personal property, and divided it as follows:

| Asset | Value | Husband | Wife |
|---|---|---|---|
| 13 Acres | $11,500 | $ 8,250 | $ 3,250 |
| Oakmont Timeshare | 5,000 | | 5,000 |
| Two Horses–net of feed & boarding bills | 3,700 | | 3,700 |
| Furniture (net value)[3] | 488 | | 488 |
| Life Insurance (cash value) | 5,197 | 4,225 | 972 |
| Total | $25,885 | $12,475 | $13,410 |

Regarding the 13 acres, the trial court gave Husband the option of buying Wife's interest in the property for $3,250. Upon payment of this sum, the court ordered that Wife would be divested of all interest in the property and that she would be required to execute a quitclaim deed to Husband. As to the items of personal property – a television, a Volkswagen car, a 4x4 wheeler, a ski machine, weights, and a computer/printer – the court ordered Wife to prepare two lists, equally dividing these items as nearly as possible. The court then held that Husband would have the choice of which list he wanted, with Wife receiving the items on the other list.

---

[2]The record indicates that Wife sold one of the four horses for $500 during the parties' separation. That money was paid into court; however, it is not clear from the record how that money was distributed between the parties. Another horse was found to be a gift to Wife and was thus classified as her separate property. The disposition of these two horses is not at issue on this appeal. As for the two remaining horses reflected in the above schedule, the trial court held that Wife was responsible for all outstanding feed and boarding bills for the horses, which Wife estimated to be approximately $2,000, since the evidence showed that she had removed them from the parties' property "perhaps unnecessarily" to be boarded commercially.

[3]Wife bought $2,718 worth of furniture during the parties' separation and financed approximately $2,230 of the purchase price. The evidence shows that she signed Husband's name to the contract without his knowledge or consent. The court awarded Wife the furniture and held that she would be solely responsible for paying the debt owed on it.

## B. Wife's Property Issues

Wife raises several issues regarding the division of marital property. She argues that the division was not equitable. She further contends that she should be given credit for the contribution to the marriage of her 401(k) retirement account, containing approximately $5,200, and for payments made on the beer store mortgage during the marriage. Wife also complains that, in dividing the marital estate, the trial court did not take into account money that she claims Husband spent on other women during the marriage. Further, she argues that the trial court erred in giving Husband the option of buying Wife's interest in the 13 acres of property and in requiring Wife to draw up lists of the remaining personal property in connection with the court-ordered selection process of these items.

We do not find that the evidence preponderates against the trial court's division of the marital estate. Given the relatively short duration of the marriage, we find the division to be equitable. *See Batson v. Batson,* 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). As for Wife's contribution of her 401(k) retirement account and the payments on the beer store mortgage, we do not find any reversible error in the trial court's judgment. While such contributions may be considered in determining an equitable division of the marital estate, Wife is not entitled to an automatic dollar-for-dollar credit for these contributions. *See Brock v. Brock,* 941 S.W.2d 896, 901 (Tenn. Ct. App. 1996). We further find Wife's argument regarding the money Husband allegedly spent on other women to be unsupported by the evidence.

Next, Wife argues that the trial court erred in disregarding the testimony of her appraiser and in relying on Husband's testimony regarding the value of his separate property. In this connection, she points out that (1) Husband failed to file an affidavit listing his assets and debts as required by a local rule of court; and that (2) Husband's credibility was impeached. She also argues that the trial court improperly considered the tax assessor's appraisals of the property testified to by Wife's appraiser because, so the argument goes, the testimony was hearsay and inadmissible.

We do not find that the trial court erred in accepting Husband's valuations of his various items of separate property. Although Husband may not have complied with a local rule requiring the filing of an affidavit, Wife did not object at trial to his testimony regarding the value of these properties. Accordingly, she waived any objection she had to this testimony. *See Baxter v. Vandenheovel,* 686 S.W.2d 908, 911 (Tenn. Ct. App. 1984) ("Evidence admitted without objection at the trial level cannot be the subject of complaint at the appellate level."). As for the issue of credibility, it is important to note the trial court's explicit finding regarding the credibility of Wife's appraiser. "[O]n an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." *Tennessee Valley Kaolin Corp. v. Perry,* 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). There is no such evidence in this record. Wife's arguments are without merit.

Wife also appeals the trial court's award to her representing her interest in the appreciation in value of Husband's separate property. She complains that she was not awarded any portion of the increase in value of Husband's construction business or the beer store. She also argues that the trial court erred in counting her $6,000 withdrawal from Husband's business account as a part of her interest in the increase in value of Husband's separate property because, so the argument goes, the account was marital property. She further contends that the $6,000 was "double-counted" because the court took it into consideration when setting temporary alimony.

The evidence does not preponderate against the trial court's award to Wife of $5,000 for her interest in the appreciation in value of Husband's separate property. The evidence shows that the increase in value of the beer store was included in the trial court's calculation of Wife's award. As for the increase in value of Husband's construction business, the court found insufficient evidence to establish its increase in value during the marriage. The evidence also reflects that in calculating her interest, the trial court took into consideration, and essentially relieved her of, her share of the obligation on the beer store mortgage, which share was approximately $19,750. Furthermore, the trial court declined to require her to repay some $6,000 that she removed from Husband's Merrill Lynch account. Although Wife contends that this account was marital property, the evidence does not preponderate against the trial court's determination that it was in fact the business account for Husband's beer store and constituted his separate property. As for Wife's claim that the $6,000 had been "double-counted," we do not find any indication in the record that her withdrawal was taken into account by the trial court when setting the amount of temporary spousal support. These issues are found adverse to Wife.

## IV. *Contempt*

Next, Wife contends that the trial court erred in refusing to find Husband in contempt for failing to pay her medical bills as previously ordered and that the trial court erred in failing to order Husband to pay the unpaid medical bills.

Determinations regarding contempt lie within the trial court's sound discretion and are final, absent any plain abuse of that discretion. *Hawk v. Hawk,* 855 S.W.2d 573, 583 (Tenn. 1993); *Sherrod v. Wix,* 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). We do not find that the trial court abused its discretion in failing to find Husband in contempt. Both parties had filed contempt petitions prior to the hearing of this case. The trial court found that both parties were guilty of at least some of the acts alleged in their respective contempt petitions. The court did not find, however, that a *willful* contempt had occurred, and ruled that, under the circumstances, it would decline to make a finding of contempt as to either party. Having found no abuse of discretion in this decision, we affirm the trial court on this issue. We further find no error in the trial court's failure to order Husband to pay any outstanding bills. Husband had already been ordered to pay all of Wife's reasonable and necessary medical expenses not covered by insurance, and Husband testified that he would comply with the court's order. Wife's argument is without merit.

-8-

## V. *Alimony*

Wife argues that the trial court erred in limiting its award of alimony to one of *in solido* spousal support of $7,200. She contends that she should have been awarded more spousal support in the form of rehabilitative or periodic alimony.

In determining the propriety, nature, and amount of an alimony award, courts are directed to consider the statutory factors enumerated in T.C.A. § 36-5-101(d)(1)(A)-(L) (Supp. 1999). "[T]here is no absolute formula for determining the amount of alimony." *Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn. 1995). The two most important factors in setting the amount of an alimony award are need and the ability to pay, with need being "the single most important factor." *Id.* Because the amount of alimony to be awarded is within the trial court's sound discretion in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. *Lindsey v. Lindsey,* 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997).

The record reflects that Wife has a high school education. Prior to the marriage, she was employed as a nurse's assistant. For a few years during the marriage, she worked to some extent in Husband's businesses. Specifically, she worked as a clerk in Husband's store, prepared payroll checks, and, on occasion, delivered supplies to Husband. Although Wife was not paid a salary by Husband, she had permission to take whatever money she needed from the beer store's cash drawer.

In November, 1996, Wife slipped on some ice and injured her knee, an injury which eventually required knee replacement surgery. Wife testified that because she cannot perform any heavy lifting or stand for long periods of time, she cannot return to her career as a nurse's assistant. After her knee surgery in early 1997, Wife was employed at a fast-food restaurant, but had to quit after three days due to swelling in her knee. She admitted that she has not looked for other employment since then.

The court noted that although Wife had testified that she needed $1,500 per month in support, it was "not satisfied that her need is that great – or that she has looked as diligently for work as perhaps she should have." Upon reviewing the evidence, we cannot say that the trial court abused its discretion in awarding Wife $7,200 as alimony *in solido*. Wife's argument is without merit.

## VI. *Use of Vehicle*

Wife next argues that the trial court erred in awarding Husband a judgment of $5,068.53 in connection with Wife's use of Husband's vehicle. We agree with the trial court's decision to award Husband a judgment for the damage done to the vehicle while in Wife's possession; however, we believe it was error for the trial court to award Husband a judgment for the rental value of the vehicle. In his contempt petition filed October 13, 1999, Husband alleged that Wife had refused to return the vehicle even though she had been "ordered to return said property in [a] previous hearing." We have reviewed the record and cannot find the order to which Husband's October 13, 1999, petition is referring. Accordingly, we find that an award to Husband to compensate him for Wife's

use of his vehicle, a use previously authorized by court order,[4] was inappropriate.  Accordingly, this portion of Husband's judgment – being $4,865 – is hereby vacated.

## VII.  *Attorney's Fees*

Finally, Wife argues that the trial court should have awarded her attorney's fees.  The question of whether to award attorney's fees is within the discretion of the trial court, and an appellate court will not disturb the trial court's award unless the evidence preponderates against it. ***Barnhill v. Barnhill,*** 826 S.W.2d 443, 456 (Tenn. Ct. App. 1991).  Upon reviewing the record in this case, we do not find that the evidence preponderates against the trial court's decision not to award Wife any portion of her attorney's fees.

## VIII.  *Conclusion*

The judgment of the trial court ordering Wife to compensate Husband for the use of his vehicle is vacated.  In all other respects, the judgment of the trial court is affirmed.  This case is remanded for the entry of an order consistent with this opinion; for enforcement of the judgment, as modified; and for collection of costs assessed below, all pursuant to applicable law.  Exercising our discretion, we tax the costs on appeal two-thirds to the appellant and one-third to the appellee.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[4]At a hearing on February 26, 1999, the trial court determined, as memorialized in an order entered April 1, 1999, that Husband had failed to provide Wife with a vehicle, as previously ordered by the court, "since January 1999." In the order entered April 1, 1999, *nunc pro tunc* February 26, 1999, the trial court decreed that Husband "shall deliver the truck to Wife by the close of business on February 26, 1999."  Therefore, even if Wife did not promptly return the vehicle after the divorce, we believe it would be inequitable to charge her with per diem use charge in view of Husband's earlier failure to provide a vehicle as ordered by the trial court.

-10-