**Lynne W. BROCK,**
**Plaintiff–Appellee,**

v.

**J. Donald BROCK,**
**Defendant–Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 13, 1996.

Published Pursuant to Tenn.Ct.App.R. 11.

Richard W. Bethea, Jr., Nicole R. Barnett, Stophel & Stophel, P.C., Chattanooga, for appellant.

Thomas O. Helton, Baker, Donelson, Bearman & Caldwell, Chattanooga, for appellee.

## OPINION

SUSANO, Judge.

In this divorce case, the trial court dissolved a marriage of 31 years. The court granted the counter-plaintiff, J. Donald Brock (Husband), a divorce from the original plaintiff, Lynne W. Brock (Wife), on the ground of adultery; awarded Husband custody of the parties' four minor children, subject to Wife's liberal visitation rights; divided the parties' property; and denied Wife's request for alimony *in futuro* and counsel fees. Husband appealed, raising issues that present the following questions for our consideration:

1. Did the trial court err in failing to "exclude from the marital estate" the "reasonable market value" of assets brought into the marriage by Husband?

2. Did the trial court properly value the marital assets?

3. Did the trial court err when it established the terms of Husband's option to purchase from Wife the common stock of Astec Industries, Inc. awarded to her in the final judgment?

4. Did the trial court err in failing to award Husband sufficient liquid assets to enable him to meet his mandatory and optional payment obligations under the final judgment?

5. Did the trial court err in treating Husband's voluntary payments to Wife during the pendency of the divorce as temporary spousal support?

6. Did the trial court err in determining that it was equitable to divide the marital assets equally?

Wife has not raised any additional issues.

Our review is *de novo;* however, the record developed below comes to us accompanied by a presumption of the correctness of the trial court's findings, which presumption we must honor "unless the preponderance of the evidence is otherwise." Rule 13(d), T.R.A.P. The trial court's conclusions of law are not afforded the same deference. *Adams v. Dean Roofing Co., Inc.,* 715 S.W.2d 341, 343 (Tenn.App.1986). ("We are not bound by [the trial court's] conclusions of law.")

## I.

### *Facts*

The parties were married on June 16, 1963. Husband was then 25 and Wife was 19. They lived in Atlanta until 1966, when Husband received a Ph.D. in mechanical engineering from Georgia Tech. The parties then moved back to Chattanooga. Wife completed two years of college prior to her marriage; after the parties' return to Chattanooga, she received a bachelor's degree in home economics from what was then the University of Chattanooga. Most of Wife's tuition and other college expenses were paid by her mother.

Wife intended to teach school and actually applied for a teaching position in the Chattanooga area. However, Husband was opposed to her working outside the home. He preferred that she be a homemaker and be responsible for the children the parties intended to have. She agreed to this arrangement.

During their marriage, the parties adopted seven children. They could not have children naturally because of Husband's physical problems. Beth was adopted in 1968; Ben followed in 1971. In 1983, the parties adopted five more children from a disadvantaged home. At the time of their adoption, the children were ages seven, six, five, and

twin girls, age four. At the time of the divorce, the twins were the only minors remaining at home.

Husband was initially employed at his father's company, Industrial Boiler Company. In 1966, Husband purchased Chattanooga Welding & Machine Corporation. That company merged with Industrial Boiler Company in 1968, and together they became Chattanooga Systems, Inc. Husband and his father were the principal stockholders and managers of the new company.

In 1969, Chattanooga Systems, Inc., merged with CMI Corporation, a publicly-traded company which manufactured asphalt manufacturing equipment and other industrial equipment. Husband was installed as president of the Chattanooga division of CMI.

In 1972, Husband left CMI and formed a new company, Astec Industries, Inc. To finance the new company, he borrowed $400,-000 from a Chattanooga bank. With these funds, he purchased a building and secured equipment from a bankrupt company. As collateral for the loan, Husband pledged his CMI stock and personally guaranteed the loan. The CMI stock was later liquidated to pay off the loan.

Husband executed a stock subscription agreement with Astec, pursuant to which he received 252,000 shares of the company's common stock. As a result of stock splits over the years, Husband now owns 2,180,000 shares of Astec stock. In addition, he has an option to purchase an additional 40,000 shares for $1.35 per share.

At the time of the divorce hearing, despite down periods in the 1970's and 1980's, Astec was a successful multi-national, multi-divisional company involved in the manufacturing and sale of asphalt manufacturing plants, paving equipment, and other related products. The company went public in 1986, and is currently traded on the NASDAQ stock exchange.

Based on the company's share price on November 1, 1994, the date of the parties' divorce judgment, Astec was valued at ap-

proximately $150,000,000. Husband's interest in the company on the same date, again based on the NASDAQ share price, was worth $33,246,000, assuming the exercise of the option to purchase the additional 40,000 shares.

Husband is an admitted workaholic. Generally speaking, he has worked in excess of 80 hours a week since 1963.

Husband has been the President and Chairman of the Board of Astec since 1975.

## II.

### *Trial Court's Division of Property*

The trial court, in a comprehensive, 52–page memorandum opinion, decided that it was equitable to divide the parties' marital estate equally. He found that all of the property at issue was marital property. The court's findings of value and division of property are as follows:

| Asset | Total Value | Distributed to Wife | Husband |
|---|---|---|---|
| Cash in Pioneer Bank | $ 16,800 | $ 8,400 | $ 8,400 |
| Residence, 240 S. Crest Rd. | 1,350,000 | | 1,350,000 |
| Vehicles and boat | 47,000 | 11,750 | 35,250 |
| Stock, Astec Industries, Inc. | 33,246,000 | 16,650,000 | 16,596,000 |
| Stock and bond holdings | 1,601,727 | | 1,601,727 |
| Retirement accounts | 175,473 | | 175,473 |
| Agreement not to compete | 200,000 | | 200,000 |
| Family silverware and other items | 10,000 | 10,000 | |
| Note receivable—Kanopolis Stone [1] | 150,000 | 75,000 | 75,000 |
| Cash payment from Husband to Wife to equalize division | | 1,670,350 | <1,670,350> |
| | $36,797,000 | $18,425,500 | $18,371,500 |

The trial court decreed that Husband would have an option to purchase the 1,110,-000 shares of Astec common stock awarded to Wife:

> For a period of twenty-nine (29) days following the date of the entry of this Court's final order in this case, not counting the date upon which such order is entered, [Husband] shall have the option to purchase the shares awarded to [Wife] by this order at a maximum price of $11,148,840 ($10.044 per share). The Court has determined this price in the following manner: 1,110,000 shares × $15.00 per share = $16,650,000 − 7% sales commission = net sales price of $15,484,500 − 28% tax rate = $11,148,840. In view of the dramatic

way in which the circumstances of Astec and these parties might be changed by a significant lapse of time, this option will remain open to [Husband] only for the period specified by this paragraph, regardless of procedural developments in the case, such as motions to reconsider or appeals.

Following the parties' separation, Husband provided Wife with $176,000 to defray her living expenses and fund her graduate art studies in New York City. The court held that these payments were spousal support *pendente lite* and "not to be treated as a part of the marital estate to be divided by the court."

1. The trial court found that the Kanopolis Stone note was worth $150,000; however, because the court found "uncertainty regarding [its] value," he simply directed that all payments on the note be divided equally between the parties.

## III.

### General Principles Regarding Division of Property

Because the issues before us involve the division of the parties' property, we deem it appropriate to discuss some of the general principles bearing on this subject.

■ In divorce cases, Tennessee recognizes two distinct types or classes of property, i.e., "marital property" as defined at T.C.A. § 36–4–121(b)(1) and "separate property" as addressed at T.C.A. § 36–4–121(b)(2). The distinction is important because the relevant statutory provision, T.C.A. § 36–4–121(a), "provides only for the division of marital property." *Batson v. Batson,* 769 S.W.2d 849, 856 (Tenn.App.1988). Implicit in the statute's mandate is the concept that assets properly classified as "separate property" are not divided between the parties, but rather are set aside to the spouse to whom the property is "separate" in nature. *Id.* ("... it is incumbent on the trial court ... to give each party their separate property, ...").[2]

■ Also implicit in the statutory scheme for the division and/or distribution of marital and separate property is the concept that the property upon which the trial court acts is, generally speaking, the property owned by the parties, individually or jointly, at the time of the divorce. *See, e.g.,* T.C.A. § 36–4–121(b)(1)(A) which defines "marital property" in terms of property

> ... acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, ...

As a corollary to this principle, and again speaking in general terms, property once owned by a spouse, either as separate property or marital property, but not owned by either spouse at the time of divorce, is not subject to classification and division or distribution when the divorce is pronounced.[3] This is because, generally speaking, a court cannot divide and/or distribute what is "not there"—property no longer owned by the parties, individually or jointly, at the time of the divorce.

■ In the instant case, Husband urges us to consider property interests owned by him at the time of the parties' marriage. Those property interests, in the form in which they existed at the time of the parties' marriage, were not owned by the parties, individually or jointly, at the time of the divorce. While they are no longer available to be divided and/or distributed by the trial court, they may still be relevant as to the division and/or distribution of property that *was* in existence at the time of the parties' divorce. For example, in general terms, if property in existence at the time of the divorce was "acquired in exchange for property acquired before the marriage," the former property is considered separate property. *See* T.C.A. § 36–4–121(b)(2)(B).

■ Property owned by a spouse at the time of marriage, but not owned "in the marriage" at the time of the divorce, can also be significant in dividing marital property if that pre-marriage property is properly viewed as a contribution of a party "to the acquisition, preservation, [or] appreciation ... of the marital ... property." *See* T.C.A. § 36–4–121(c)(5). This does not mean that the property to be divided is "separate property", but rather that a spouse's contribution of his or her pre-marriage property is a factor to be considered in reaching an equitable division of the marital property. In other words, the property owned at the time of the marriage does not come into play as a "classification" matter, but rather as a factor to be considered in dividing marital property.

---

2. Note, however, that a trial court has the power, in an appropriate case, to order "suitable support and maintenance of either spouse ... out of [a] *spouse's property.*" T.C.A. § 36–5–101(a)(1). (Emphasis added).

3. However, if the property is fraudulently conveyed before the divorce, the court can consider it under the express language of T.C.A. § 36–4–121(b)(1)(A).

## IV.

### Property Owned by Husband at Time of Marriage

■ Husband argues that the trial court's division of the marital property "is inequitable because it [does] not provide him with a credit" for the assets that he owned at the time of the parties' marriage. This argument is based on a false premise. It incorrectly assumes that some part of the property to be divided in this case is separate property because Husband owned property at the time of the marriage.

The proof is clear that prior to the parties' marriage in 1963, Husband sold a carpet-dryer design to Singer–Cobble, Inc., for $125,000, payable in ten equal annual installments. This receivable had a balance due of $112,500 when the parties married. That balance was apparently paid during the first nine years of the parties' marriage. It is also clear from the record that Husband owned a 10% interest in his father's business, Industrial Boiler Company, at the time of the marriage. The value of that interest at the time of the parties' marriage is not clearly reflected in the record, but it is obvious that it had some value.

Husband claims that these assets were his separate property because they fit within the definition of "separate property" found at T.C.A. § 36–4–121(b)(2)(A):

All real and personal property owned by a spouse before marriage.

He argues from this that "the property division is inequitable because it did not provide him with a credit for [the Singer–Cobble receivable] or for his interest in Industrial Boiler."

We agree that the property in question falls within the definition of "separate property." We disagree with Husband's interpretation of the significance of this fact in this case.

The definitions of "separate property" and "marital property" found at T.C.A. § 36–4–121 are for the purpose of aiding a court in properly classifying property owned by one of both of the parties *at the time of their divorce.* In the instant case, neither of the assets in question was owned by either of the parties at the time of the divorce. Those interests had been disposed of or otherwise liquidated at an earlier time. The property interests represented by these assets were merged into the "wealth" of the marriage.

We are not aware of any authority, and counsel has not directed us to any, for the proposition that assets of a spouse at the time of marriage, but not owned by him or her at the time of the divorce, are to be carved out of the marital estate as separate property for the benefit of that spouse at the time of the divorce.

The appellant is not entitled to an automatic dollar-for-dollar credit against the marital estate for the value of property owned by him at the time of the marriage, but no longer owned by him at the time of the divorce. However, to the extent these interests were contributed by Husband to the wealth of the marriage, they are a proper matter to be considered in determining how the marital estate should be equitably divided. *See* T.C.A. § 36–4–121(c)(5). *Cf. Jahn v. Jahn,* 932 S.W.2d 939 (Tenn.App.1996).

Husband is not correct in claiming an automatic dollar-for-dollar credit against the marital estate for the "reasonable market value" of property owned by him at the time of the marriage, but not owned, in whole or in part, by him at the time of the divorce. This issue is found to be without merit.

## V.

### Value of Marital Property

■ Husband contends that the trial court did not properly value certain assets in the marital estate. He argues, in effect, that the evidence preponderates against the trial court's findings as to these assets. A comparison of the trial court's findings and the values proposed by Husband is demonstrated by the following table:

| Asset | Trial Court's Finding | Husband's Value |
|---|---|---|
| Stock and Bond Holdings | $1,601,727 | $1,235,229 |
| Cash at Pioneer Bank | 16,800 | 13,000 |
| Retirement Accounts | 175,473 | 94,755 |
| Marital Residence | 1,350,000 | 986,700 |
| Misc. Vehicles and Boat | 47,000 | 15,000 |
| Non-compete Agreement | 200,000 | 100,000 |
| Kanopolis Note | 150,000 | –0– |
| Misc. Personal Property | 10,000 | 20,000 |

■■■ Each of the parties submitted their own individual testimony as well as other evidence to support their respective positions regarding the value of these assets. The trial court, in its memorandum opinion, indicated that it had considered all of the relevant evidence and had based its values on the totality of this evidence. We have considered all of this evidence in light of the following test set forth in *Wallace v. Wallace*, 733 S.W.2d 102 (Tenn.App.1987):

> The value of marital property is a fact question. Thus, a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. (citation omitted).
>
> \* \* \* \* \* \*
>
> The value of a marital asset is determined by considering all relevant evidence regarding value. (citation omitted).
>
> \* \* \* \* \* \*
>
> ... the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted. (citation omitted).

*Id.* at 107. We do not find that the evidence preponderates against the trial court's findings with respect to the various values of the listed assets. Husband's issue on this subject is without merit.

## VI.

### *Option to Purchase Stock and Liquidity Issues*

■■■ A trial court's decree with respect to a division of marital property is "given great weight on appeal." *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn.App. 1991). In the instant case, the court below granted Husband an option to buy the Astec common stock awarded to Wife. Husband contends that the trial court erred in the manner in which it crafted a formula for the buy-out. He also contends that it erred in limiting the option period, in failing to award him liquid assets to exercise the option, and in failing to provide him with sufficient liquidity to make the equalizing payment of $1,670,350 required by the final judgment.

It is clear that Husband wanted very much to continue ownership of all of the Astec stock. He contended that his effective control of the corporation was essential to the marketability of the Astec stock, and was also of extreme importance to the institutional investors, who owned approximately 45% of the stock at the time of the divorce.

The trial court's mandate was to divide the party's marital estate in an equitable manner. Obviously, that court determined that it was impossible to do so and still provide Husband with control of all of the stock that he owned prior to the divorce. We agree. While it was certainly beneficial to Husband and maybe even to Astec if Husband continued to control all of the shares of Astec stock at issue in this case, this consideration cannot take precedence over the court's very clear, overriding obligation to divide the marital estate equitably.

We also do not find error in the fact that the court valued the Astec stock at $15.00 per share, the price at which the stock was trading on the date of the divorce. This valuation is in keeping with the language of the pertinent statute, T.C.A. § 36-4-121(b)(1)(A), which provides that the marital estate be "valued as of a date as near as reasonably possible to the final divorce hearing date."

However, there is a more fundamental reason why the trial court's valuation of the Astec stock is not error. Since this was an asset that could be and was divided in kind, the valuation was immaterial except as to the formula for the buy-out. Regardless of the value assigned to the stock, an award of fifty percent to each party achieved the trial court's objective of equality.

As to the fact that the option formula starts out with a raw price of $15.00, we find no error in this or any other aspect of the option. The option was granted as an accommodation to Husband. Equity did not require the trial court to grant Husband an option of any kind. There was no reason to deprive Wife of this very valuable asset except on the fairest of terms to her. Given the volatility of the market for the stock, the formula and the 29–day "window" were fair to both parties. In our opinion, the trial court's judgment would have been fair and equitable even in the absence of an option.

■■■ As to Husband's complaint that the trial court did not award him liquid assets to satisfy his mandatory and optional payment obligations, there are a number of responses. First, substantially all of the liquid assets in the marital estate were awarded to Husband. He received all of the stock and bond holdings of $1,601,727. Second, he was awarded substantial assets that could be liquidated to provide funds to meet at least the mandatory payment of $1,670,350. More importantly, the trial court was not required to provide liquidity to either or both of the parties; the court's only responsibility was to divide the estate in an equitable fashion.

Husband's third and fourth issues are found to be without merit.

## VII.

### Payments to Wife Pending Divorce

■■■ Husband contends that the voluntary payments made to Wife pending the divorce—totaling $176,000—should have been charged against her as a part of her equal share of the marital estate.

The Chancellor determined that Husband's voluntary payments should be considered spousal support *pendente lite*. A trial court has broad discretion regarding spousal support and division of property. *Marmino v. Marmino*, 238 S.W.2d 105, 107 (Tenn.App. 1950); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn.App.1988); *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn.App.1990); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. App.1987).

The evidence does not preponderate against the Chancellor's findings with respect to these voluntary payments. Certainly, we cannot say that he abused his discretion in not considering these payments as a part of the division of property.

## VIII.

### Was Division of Marital Estate Equitable?

■■■ Husband contends that the trial court erred when it divided the marital estate equally. Generally speaking, he bases this assertion on two premises: first, that the trial court failed to factor into the division "equation" the fact that he had significant assets at the time of the marriage; and, second, that beginning in 1989, Wife's contributions to the marriage significantly lessened. We will consider these matters in reverse order.

Husband candidly admits that Wife's contributions in the first 26 years of their marriage were significant and substantial. He concedes in his brief what is abundantly clear from the record before us:

> It is undisputed that for the first [26] years of the marriage, [Wife] fulfilled her role as wife, mother and homemaker.

He contends, however, that this changed in 1989 when she underwent heart surgery, and individuals close to her passed away, one in a tragic manner. He says that from that point on, her relationship with her children and Husband deteriorated. He points out that she went back to school, pursued a graduate degree in art in New York City, left the marital residence for good on September 21, 1993, and started an adulterous relationship, the latter being the basis upon which the trial court granted Husband an absolute divorce.

The trial court found that her contributions were "extraordinary" prior to 1989, and ordinary, but substantial, after that. The evidence does not preponderate against the trial court's finding that Wife's non-monetary contributions were equal to Husband's contributions during the period of their marriage.

If the only issue before us was whether the contributions made by the parties *after their marriage* dictate an equal division of the marital estate, we would not hesitate to affirm the trial court's judgment without modification. However, we believe the trial court, in considering the factors set forth at T.C.A. § 36–4–121(c)(1)–(10), failed to give sufficient weight to the fact that Husband brought substantial property into the marriage. We believe this contribution by Husband requires, on this *de novo* review, that we divide the marital property in a different manner.

It is clear from the record that, at the time of the parties' marriage, Husband owned an account receivable from Singer–Cobble, Inc., in the amount of $112,500. It is also clear that he owned a 10% interest in Industrial Boiler Company at the same time. In October, 1964, a little more than a year after the parties' marriage, the parties had a net worth of $234,178.41, according to a financial statement prepared by Husband.

The trial court found that Husband's rights under the agreement with Singer–Cobble were marital property because 90% of the payments were received after the marriage and because Husband had some consulting duties under the agreement for two years during the marriage. He refused to consider Husband's 10% interest in Industrial Boiler Company because he found that there was insufficient proof to demonstrate that the 10% interest (or, for that matter, the payments under the agreement with Singer–Cobble) was used to fund Husband's interest in Astec. We believe all of this misses the point.

As we have previously indicated, the marital property/separate property dichotomy set forth in T.C.A. § 36–4–121 is designed to enable a court to classify property owned by one or both of the parties *at the time of the divorce.* Since neither of the assets now under discussion was still in existence and owned by Husband, individually or jointly, at the time of the divorce, the trial court's

reasoning fails to address the real question: Did Husband have a net worth that he brought into the marriage which should be considered as a contribution by him—and not a contribution by the joint efforts of the parties—under T.C.A. § 36–4–121(c)(5)? The record is clear that he had such an estate and that he contributed it to the wealth of the marriage.

We find that the evidence preponderates against the trial court's finding that the account receivable was a joint contribution to the marital estate. It predated the parties' marriage. It was clearly a payment for the design of a piece of machinery, and not for the ancillary consulting work of two years' duration. The fact that 90% of the payments were made after the marriage is immaterial to the "contribution" issue.

It seems clear to us that the bulk of the parties' net worth that had grown to $234,178.41 in a little less than a year after their marriage is attributable to Husband's "contribution" of his net worth that preexisted the marriage. Wife had no assets at the time of the marriage. There was nothing that the parties did during their first year of marriage that can account for such a large net worth. It is important to remember that all of these interests are in 1963–1964 dollars. In today's dollars, these values would be substantially higher.

The wealth that Husband accumulated before the marriage, which he and he alone produced, was the "seed" wealth for the substantial marital estate we now have before us. It is true that it cannot be directly traced into Husband's stock holdings in Astec. As we have previously stated, we are satisfied that the Astec stock is clearly marital property; however, we do not understand that Husband is arguing on this issue that Astec is his separate property as property "acquired in exchange for property acquired before the marriage," one of the definitions of separate property. *See* T.C.A. § 36–4–121(b)(2)(B). Even if he is so contending, we agree with the trial court that such a classification is contrary to the weight of the evidence. However, as we understand Hus-

band's position, he is contending that he contributed his pre-marriage estate to the marriage and is entitled to more than 50% of the marital estate because of this contribution. We agree.

In order to achieve an equitable division of the marital estate, we believe the shares of Astec common stock should be divided 55% to Husband and 45% to Wife. We believe the remainder of the court's judgment is fair and equitable. The time for exercising the option has passed, and that issue is now moot. As we have previously indicated, the terms of the option were fair to both parties, especially Husband. We decline to grant Husband a new option as a part of our redistribution of the Astec stock.

The trial court's judgment awarding each of the parties 1,110,000 shares of Astec stock is hereby reversed. In all other respects the trial court's judgment is affirmed. This case is remanded to the trial court (1) for the entry of an order modifying its earlier order so as to award Wife 999,000 shares of Astec stock and to award Husband 1,221,000 shares of that stock, his shares to include the 40,000 shares available to him under his option; (2) for enforcement of the judgment, as modified; and (3) for collection of costs assessed below, pursuant to applicable law.

Costs on appeal are taxed to the parties equally.

GODDARD, P.J., and McMURRAY, J., concur.