IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 27, 2001 Session

## ANDREW LEE MAYS v. DEBORAH JANE ROGERS MAYS

**Direct Appeal from the Circuit Court for Shelby County**
**No. 156204-5 R.D.     Kay S. Robilio, Judge**

---

### No. W2000-03067-COA-R3-CV - Filed February 5, 2002

---

This is a divorce and child custody case. Husband sued for divorce, and Wife countersued. Husband dismissed his complaint on the day of trial. Wife was granted the divorce and custody of the parties' minor child. On appeal, Husband argues that the trial court erred in its division of marital property, its decision to deny Husband rehabilitative alimony, its award of attorney's fees to Wife, and its decision not to hear evidence on the issue of child custody. We affirm in part, reverse in part, and remand the case to the trial court for a hearing on child custody.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part;**
**Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID G. HAYES, SP. J., joined.

Kay Farese Turner and Martin W. Cash, Jr., Memphis, Tennessee, for the appellant, Andrew Lee Mays.

Charles W. McGhee, Memphis, Tennessee, for the appellee, Deborah Jane Rogers Mays.

### OPINION

Andrew Mays and Deborah Mays were married on April 12, 1975. During their marriage, four children were born to the couple. Throughout most of the marriage, Mr. Mays worked as a painting or remodeling contractor. Ms. Mays worked as a real estate agent.

After twenty-two years of marriage, on July 3, 1997, Mr. Mays filed a complaint for divorce where he sought custody of the children. Mr. Mays took no further action on this complaint, however, and on June 18, 1998, Ms. Mays filed an answer and counter-complaint where she sought a divorce from Mr. Mays and custody of the couple's children. The couple ultimately separated on December 19, 1998.

When the case came to trial on September 11, 2000, Mr. Mays dismissed his complaint for divorce, citing a desire to remain married to Ms. Mays. Accordingly, the trial proceeded with Mr. Mays contesting Ms. Mays's action for divorce. After a lengthy trial, the court granted Ms. Mays a divorce on the grounds of inappropriate marital conduct.

In its distribution of marital property, the court awarded the marital residence to Mr. Mays. The court ordered the parties to obtain an independent estimate of the fair market value of the marital residence and commanded Mr. Mays to pay Ms. Mays one-half of the home's equity interest. Regarding the parties' personalty, the court awarded Mr. Mays the 1996 pickup truck and the 1975 Volvo. The court also awarded Mr. Mays the Union Planters Bank Account, the NBC checking account, his Fidelity IRA accounts, one-half of the NBC Money Market account, one-half of the NBC Portfolio Account and one-half of the H.D. Brous Account. As to Ms. Mays, the court awarded her the 1989 Honda and the Previa van. Additionally, the court awarded Ms. Mays the Commercial Bank & Trust checking account, her Fidelity IRA accounts, and the corresponding halves of the NBC Money Market, NBC Portfolio, and H.D. Brous accounts. The court also awarded each party the personalty held in their individual capacity.

Further, the court denied Mr. Mays's claim for rehabilitative alimony. The court ordered Mr. Mays to pay Ms. Mays's attorney's fees. Also, the court assessed the costs of the action against Mr. Mays.

Finally, by the time of the divorce proceedings, only one of the Mays' four children was a minor.[1] At trial, Mr. Mays sought custody of the minor child, but the court would not permit testimony on the issue. The court based its decision on Mr. Mays's refusal to comply with previous court orders that required Mr. Mays to undergo a psychological and custody evaluation. Therefore, the court awarded custody of the child to Ms. Mays.

Mr. Mays appeals the decision of the trial court, raising the following issues, as we perceive them, for our review:

I.      Whether the trial court erred in the division of the marital property.

II.     Whether the trial court erred in denying Mr. Mays's claim for rehabilitative alimony.

III.    Whether the trial court erred in ordering Mr. Mays to pay Ms. Mays's attorney's fees.

IV.     Whether the trial court erred by awarding Ms. Mays primary legal custody of the parties' minor child.

---

[1]The child was born on April 30, 1985.

Additionally, Ms. Mays raises two issues for our review. These issues, as we perceive them, are as follows:

I.      Whether Mr. Mays's appeal is frivolous.

II.     Whether Ms. Mays should be awarded her attorney's fees incurred for this appeal.

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *e.g., Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *The Distribution of the Parties' Assets*

In his first issue, Mr. Mays contends that the trial court erred in its division of the Mayses' property. The law regarding the classification and division of a divorcing couple's property is well established in this jurisdiction. In an action for divorce, Tennessee, as a "dual property" state, draws a distinction between separate and marital property. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Because the Tennessee statutes only allow for the division of marital property upon the dissolution of a marriage, it is of primary importance for the trial court to classify property as separate or marital. Tenn. Code Ann. § 36-4-121(a); *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). Therefore, because separate property is not subject to division in an action for divorce, the trial court must initially determine the nature of the parties' property. *Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997); *Brock*, 941 S.W.2d at 900.

The General Assembly defines "separate property" as:

(A) All real and personal property owned by a spouse before marriage;
(B) Property acquired in exchange for property acquired before the marriage;
(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2) (2001). Further, the Tennessee legislature provides the following definitions for "marital property" in a divorce action:

(1)(A) "Marital Property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing a complaint for divorce. . . .

(B) "Marital Property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

(C) "Marital Property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

Tenn. Code Ann. § 36-4-121(b) (2001).

This court has recognized instances where separate property can become part of the marital estate due to the parties' treatment of the separate property. The doctrines of transmutation and commingling provide an avenue where separate property can become marital property. *Hofer v. Hofer*, C.A. No. 02A01-9510-CH-00210, 1997 WL 39503, at *3-4 (Tenn. Ct. App. Feb. 3, 1997)(*no perm app. filed*)(citing *Pope v. Pope*, No. 88-58-II, 1988 WL 74615, at *3 (Tenn. Ct. App. 1988)); *Batson*, 769 S.W.2d at 858. This Court has previously defined transmutation as follows:

[Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Batson*, 769 S.W.2d at 858 (quoting 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.2, at 185 (1987)). The related doctrine of commingling concerns instances where separate property becomes marital property when the separate property is inextricably mingled with marital property or the other spouse's separate property. *Hofer,* 1997 WL 39503, at *3.

Commingling does not occur if the separate property can be traced into its product or if the separate property continues to be segregated. *Id.*

Initially, Mr. Mays asserts that the trial court erred by determining that the NBC Bank Portfolio Account consisted entirely of marital property. Mr. Mays contends that he placed money he inherited during the marriage into the NBC Bank Portfolio Account[2]. Mr. Mays maintains these funds are separate property, not marital property subject to equitable division. Therefore, Mr. Mays asserts that the trial court should have awarded him $126,133.00 out of the $203,979.00 held in the NBC Portfolio Account as separate property, leaving $77,846 to be divided equitably among the parties.

After a thorough review of the record, we fail to find any indication that Mr. Mays raised the issue at trial. It is well-settled in Tennessee that issues not raised in trial cannot be raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 151 (Tenn. 1991). At no point during the proceedings did Mr. Mays assert that the $126,133.00 was separate property that should not be included in the equitable division of the marital property. Our review of the record suggests the opposite. We find the following exchange between counsel for Mr. Mays and the trial court regarding Mr. Mays's inherited funds as relevant to our conclusion:

> Ms. Turner: So if he uses his inherited funds in any fashion and has placed them in these marital funds, I mean - -
>
> The Court: They've been subsumed?
> Ms. Turner: That's correct. But his contribution from separate funds should be recognized by the Court, I think.
>
> The Court: Not if they - - well, now, you-all can brief this for me. But my understanding of the law is if you don't isolate the funds and you use them for the benefit of the family, they lose their identity.
>
> Ms. Turner: They become marital assets. But what the Court – the Court's correct, commingled assets.
>
> The Court: Yeah, right.
>
> Ms. Turner: But the factor that's in the statute and the one that I want the Court respectfully to give some attention to is the factor that says that when one has

---

[2]Mr. Mays stated in his Local Rule 14(D) Memorandum, later incorporated as a trial exhibit, that he has inherited $126,233.00 in funds since 1986. These funds included $28,999.00 from his mothers estate, $744.00 in interest from the account, $34,568.00 from the sale of his mother's house, $13,572.00 from his grandfather's estate, $26,264.00 in proceeds from a note payable to his maternal family, $10,786 in theft settlements, $1,200.00 inheritance from Billy James Farms, and a $10,000 gift from his uncle.

contributed from their separate property or diminished their separate property in furtherance of the marital estate – and there's a recent case that recognizes this doctrine, and its called the seed money – seed money. And its **Bock vs. Brock** [sic]. And what it says is this Court is not obligated to take dollar for dollar and offset that money as being inherited put into the marital estate. What the Court should do is to give consideration for a weighted division in favor of that person who put all of their inherited funds into the marital estate.

The Court: Well, certainly, that's –

Ms. Turner: So that's all I'm going to, and I want the Court to recognize where I'm going. *I'm not trying to argue that it's still separate*. (emphasis added).

There are similar exchanges throughout the trial, including Mr. Mays's opening statements to the court and Mr. Mays's closing statements to the court. For these reasons, we do not believe that Mr. Mays raised the issue of whether he should receive the property listed in his Local Rule 14(D) Memorandum as separate property.

Assuming, arguendo, that Mr. Mays did raise the issue at trial, we find no error in the court's classification of the entire NBC Bank Portfolio Account as marital property. First, in direct testimony, Mr. Mays admitted to commingling the inheritances with marital property.[3] Second, the evidence establishes that Mr. Mays deposited funds from his business ventures into the NBC Bank Portfolio Account and used the account to fund different family activities. This evidence, according to this Court's opinion in **Hofer**, raises the presumption that commingling of separate and marital assets occurred in the account. While, as indicated in **Batson**, 769 S.W.2d at 858, the presumption can be rebutted with "evidence of circumstances or communications clearly indicating an intent that the property remain separate," the evidence does not preponderate in favor of such an intent by Mr. Mays. Additionally, the court struggled with Mr. Mays's credibility regarding the NBC Bank Portfolio Account. In its bench ruling, the court stated the following:

[W]hile it is not disputed that Mr. Mays received some funds from his family's wills, testate disbursements, the Court, because of the credibility of Mr. Mays, is not sure what happened to those accounts. Perhaps he did indeed contribute all of them for the family or perhaps he did not, but I can't rule in his favor on that particular issue.

Because the trial judge is in a much better position to weigh and evaluate the oral testimony of trial witnesses, we give great weight to the trial judge's findings on issues involving the credibility of witnesses. **Randolph v. Randolph**, 937 S.W.2d 815, 819 (Tenn. 1996). In light of the court's

---

[3]Counsel for Mr. Mays asked whether the inheritances have been commingled with marital property. After a brief explanation, Counsel asked Mr. Mays, "So the answer to the Court is yes, you commingled?" Mr. Mays replied, "Yes, ma'am, I did."

finding regarding the credibility of Mr. Mays and the record as a whole, we conclude that the trial court did not err in classifying the $126,233 as marital property.

In Mr. Mays's second argument regarding the trial court's distribution of the parties' assets, he contends that if the NBC Bank Portfolio Account was marital property, he should receive a weighted distribution of the account because of his individual contributions. In support of his argument, Mr. Mays calls our attention to section 36-4-121(c)(5) of the Tennessee Code. With regard to the equitable distribution of marital property, this section states that the court shall consider the following:

> The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as a homemaker or wage earner to be given the same weight if each party has fulfilled its role[.]

Tenn. Code Ann. § 36-4-121(c)(5)(2001). Mr. Mays maintains that this section illustrates that a trial court must consider the impact of a party's voluntary contribution to the marital estate. Mr. Mays contends that his voluntary contribution to the marital estate warrants a weighted distribution of the marital property.

This Court has previously addressed this issue. In *Brock v. Brock*, 941 S.W.2d 896, 904-05 (Tenn. Ct. App. 1996), this Court determined that Mr. Brock should receive a greater share of the marital estate due to his contributions of premarital property to the marriage. In that case, we stated that Mr. Brock accumulated wealth prior to the marriage and contributed this wealth to the marriage. *Id.* at 904. In light of section 36-4-121(c)(5) of the Tennessee Code, we determined that this wealth "was the 'seed' wealth for the substantial marital estate we now have before us." *Id.* In recognizing the assets Mr. Brock brought into the marriage, we held that he should be awarded 55% of a certain stock that comprised the bulk of the marital estate. *Id.* at 899, 905.

When a trial court divides marital property upon divorce, the court must consider not only section 36-4-121(c)(5) of the Tennessee Code, but all of the relevant factors listed in part (c) of that section.[4] Further, though the trial court's distribution of the parties' marital property must be

---

[4] Other factors to be considered by the court include:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased spending power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income. . . .

(continued...)

equitable, the court is not required to divide the parties' marital property equally. ***Watters v. Watters***, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). The equity or inequity of a court's distribution of marital property is determined by examining the final results of the court's ruling rather than the division of any particular piece or category of marital property. ***Id.*** Finally, we note that trial courts are afforded a great deal of discretion when dividing marital property, and the decisions made by a trial court in the division of marital property are entitled to great weight on appeal. ***Bookout v. Bookout***, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997).

In the present case, the court awarded Mr. Mays approximately 54% of the marital estate. This award included an equal distribution of the NBC Bank Portfolio Account between the parties. As we are chiefly concerned with the final results of the court's distribution of the parties' marital property, we find no error in the court's division of the property. From our review of the record in light of all relevant factors provided in section 36-4-121(c) of the Tennessee Code, the evidence does not preponderate against the court's judgment. Both parties made substantial contributions to the marriage. The marriage lasted more than twenty-three years. Each party is in reasonably good physical health with the capacity to earn a living after the divorce. In light of these factors, the court awarded Mr. Mays a majority of the parties' marital property. While the amount Mr. Mays received was not in exact accordance with the amount of the inherited property that he contributed to the marital property, Mr. Mays is only entitled to an equitable distribution of the marital property based upon the factors provided by the General Assembly. In this case, the trial court's division of the marital property was equitable. Accordingly, we hold that the court properly distributed the marital assets.

### *Mr. Mays's Claim for Rehabilitative Alimony*

In his second issue, Mr. Mays argues that the trial court erred in denying his claim for rehabilitative alimony. The trial court ruled as follows:

> I wanted to review Dr. Ennis' deposition. I believe it indicates that Mr. Mays' depression may have existed for his lifetime and may be even permanent for the rest of his lifetime, but he has a history of working, and also the fact that many people have depression but continue to work, and while his depression apparently has been exacerbated by the Court proceedings, which it is unequivocal that he started himself by filing the complaint, they have been exacerbated, the Court is going to take the view that he is going to be able to get back on his feet with titration of his medication and that he will be able to work as he has worked in the past albeit suffering from depression, so I am not going to make an award of alimony to Mr. Mays.

Mr. Mays contends that rehabilitative alimony is warranted in this case chiefly because of the evidence regarding his depression and Ms. Mays's earning capacity.

---

[4](...continued)
Tenn. Code Ann. § 36-4-121 (2001).

Trial courts have broad discretion to determine whether alimony is appropriate and, if so, the nature, amount, and duration of the alimony awarded. *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998). Accordingly, appellate courts are reluctant to second guess a trial court's decision regarding alimony and will not disturb such a decision unless it is unsupported by the record or counter to the public policies contemplated in the applicable Tennessee statutes. *Id.* There are no hard and fast rules to be applied in cases involving a request for alimony. *Id.* Instead, decisions regarding alimony hinge on the unique facts of the case and involve the careful consideration and balancing of many factors, including those set forth in section 36-5-101(d)(1) of the Tennessee Code. *Id.* at 235. Ultimately, the most important factors that a court must consider when determining whether to award alimony are (1) the need of the spouse seeking support and (2) the ability of the other spouse to pay support. *Id.*

Our statutes express a preference for an award of rehabilitative alimony to rehabilitate a spouse who is economically disadvantaged relative to the other spouse. Tenn. Code Ann. § 36-5-101(d)(1)(2000); *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). The purpose of rehabilitative alimony is to promote the self-sufficiency of the disadvantaged spouse by allowing them to acquire additional job skills, education, or training. *Kinard*, 986 S.W.2d at 234.

In this case, the record supports the trial court's decision to deny Mr. Mays rehabilitative alimony. The record shows that Mr. Mays is suffering from depression. Further, Mr. Mays's psychiatrist, Dr. Ennis, opined that Mr. Mays's depression would continue to plague him throughout his life. Importantly, however, Dr. Ennis stated that Mr. Mays has suffered from this affliction since Mr. Mays was approximately sixteen years old. Therefore, the record supports the trial court's finding that Mr. Mays's depression has been a lifelong problem.

The record also shows that Mr. Mays has worked throughout his life, making a living as a painting and remodeling contractor since 1978. Mr. Mays's reported his gross income from his self-employment as $19,075 in 1993, $29,156 in 1994, $15,101 in 1995, $46,150 in 1996, $22,056 in 1997, and $34,109 in 1998. Mr. Mays reported a loss of $11,155 in 1999. Additionally, through April 24, 2000, Mr. Mays grossed $24,600. Though Mr. Mays maintains that he could not work during the five months leading to trial, Mr. Mays testified that he took part in various other activities during that time, such as preparing for trial, remodeling his home, working in his garden, and vacationing in Hawaii. From this evidence, the trial judge properly concluded that Mr. Mays's depression was not so severe that it prohibited Mr. Mays from earning a living. The court was correct in concluding that rehabilitative alimony was not necessary in order for Mr. Mays to become self-sufficient.

The record also shows that although Dr. Ennis stated that Mr. Mays's depression impacted his work, Dr. Ennis did not state that Mr. Mays's depression prevented him from working. Further, Mr. Mays stated that he is reacting in a positive manner to the combination of medicines ordered by Dr. Ennis. In light of this evidence, the court properly found that Mr. Mays will be able to work as well in the future as he did in the past. The trial court properly exercised its discretion in ruling that

Mr. Mays failed to illustrate a need for rehabilitative alimony. Accordingly, the court properly denied Mr. Mays's request for alimony.

### *Attorney's Fees*

Regarding his third issue, Mr. Mays asserts that the trial court erred by awarding Ms. Mays her attorney's fees.[5] In awarding Ms. Mays her attorney's fees, the court stated the following:

> I'm also awarding to Mrs. Mays the attorney's fees. Mr. Mays is the one who started all of this with the filing of his complaint and I believe that her proposed division of marital property certainly fell within the range of reasonableness, that if Mr. Mays had not been rigid on the point of saying that because of his religious beliefs he did not want this divorce and subjecting Mrs. Mays to the embarrassment of a trial where we have to have the matters heard on fault, that all of that would not have been necessary and that that was manipulative and that Mrs. Mays should not be penalized for that.

In a divorce case, an award of attorney's fees is treated as an award of alimony. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998). Thus, when determining whether to award attorney's fees, the trial court is required to consider the same factors used when considering a request for alimony. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with alimony, need is the critical factor to be considered by the court when deciding whether to award attorney's fees. *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). An award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay attorney's fees. *Id.* The question of whether to award attorney's fees, and the amount thereof, are largely left within the discretion of the trial court and will not be disturbed on appeal unless the trial court clearly abused that discretion. *Aaron v. Aaron,* 909 S.W.2d 408, 411 (Tenn. 1995).

Appellate courts may review a trial court's discretionary decisions, but that review is with less appellate scrutiny. *White v. Vanderbilt University*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999). If the discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *Id.* at 223. A trial court must use conscientious judgment when making discretionary decisions. *Id.* The court must consider the applicable law along with the facts before the court. *Id.* A discretionary decision will be set aside only when the trial court misconstrued or misapplied the controlling legal principles or acted contrary to the substantial weight of the evidence. *Id.* Therefore, an appellate court will review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id.*

---

[5]Ms. Mays attorney's fees totaled $21,358.13.

In the present case, we believe the trial court erred in awarding Ms. Mays her attorney's fees. Considering the factors outlined above, the record does not support a finding that Ms. Mays is financially disadvantaged relative to Mr. Mays as a result of this divorce. Additionally, the record does not support a finding that Ms. Mays lacks sufficient resources to pay her attorney. Our review of the record illustrates that Ms. Mays reported a gross income of more than $70,000 in 1999. Additionally, Ms. Mays will receive more than $200,000.00 in liquid assets according to the divorce decree. The substantial weight of the evidence establishes that Ms. Mays does not have the need required in order to justify an award of attorney's fees.

Ms. Mays argues that attorney's fees are proper because of the actions of Mr. Mays. Ms. Mays cites *Gilliam v. Gilliam*, 776 S.W.2d 81, 86-87 (Tenn. Ct. App. 1988), in order to support her contention that attorney's fees are warranted when the actions of one party create the bulk of the attorney's fees. Ms. Mays reliance on *Gilliam* is misplaced. The present case does not involve the type of obstructionist tactics the husband utilized in *Gilliam*. There, we stated that the husband's litigation tactics went "beyond the bounds of reason." *Id.* at 86. In this case, Mr. Mays simply contested the divorce. Mr. Mays did not employ obstructionist litigation tactics that frivolously increased Ms. Mays's legal bill. Mr. Mays did not abuse the discovery process, nor did he force Ms. Mays to respond to frivolous and false claims. *See id.* We find the fact that Mr. Mays originally filed the complaint for divorce of no consequence to our decision. The record does not contain evidence that Mr. Mays used any tactics to penalize or cause undue cost to Ms. Mays. Therefore, we hold that an award of attorney's fees to Ms. Mays is not supported by the evidence and reverse the trial court's decision to award Ms. Mays her attorney's fees.

### *Child Custody*

In his final issue, Mr. Mays argues that the trial court erred by dismissing his petition for custody of the parties' minor child and awarding custody of the child to Ms. Mays. In its final decree of divorce, the court's stated reason for dismissing Mr. Mays's complaint was "due to Husband's refusal to comply with the Court's previous Orders." The court was referring to an order entered on January 6, 2000 and an order entered on February 29, 2000. The January order required both parties to "undergo a psychological and custody evaluation immediately." The February order states as follows:

> The Court asked whether or not [Mr. Mays] would allow counsel for [Ms. Mays] to take the deposition of his treating psychiatrist to determine his mental status and/or an independent evaluation performed. [Mr. Mays] would not answer the question to the Court affirmatively, and therefore, the Court hereby strikes [Mr. Mays's] claim for custody unless he immediately obtains evidentiary proof as to his mental status.

Mr. Mays failed to provide the records and did not receive the independent evaluation. As a result, Ms. Mays moved to dismiss Mr. Mays's petition for child custody at the opening of the trial. Mr. Mays argued that the court should be aware of all the facts and circumstances before granting the motion, and further, that the best interests of the child mandate that the court should make a

determination of custody after hearing proof on the matter. The court refused to hear further proof and dismissed Mr. Mays's claim for custody.

In child custody matters, trial courts are vested with a great deal of discretion. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996); *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). The trial court, however, must still base their child custody decisions on the proof and upon the correct application of the law. *Gaskill*, 936 S.W.2d at 631. The court's central and utmost concern in a custody case is the welfare and best interests of the parties' minor children. *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 747 (Tenn. Ct. App. 1996). Custody should never be utilized as a tool to punish or reward the parents. *Gaskill*, 936 S.W.2d at 630.

Fitness for custodial responsibilities is a comparative matter that the trial court is required to make. *Herrera v. Herrera*, 944 S.W.2d 379, 386 (Tenn. Ct. App. 1996). Custody determinations are fact driven and require the trial court to carefully weigh many considerations. *Gaskill*, 936 S.W.2d at 630. Relevant factors for the trial courts consideration include the following:

> [T]he age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

*Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999) (quoting *Gaskill*, 936 S.W.2d at 630 (quoting *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983))); *see also* Tenn. Code Ann. § 36-6-106 (2001).

In the present case, the trial court erred when it failed to permit Mr. Mays to present proof on the child custody issue before awarding custody to Ms. Mays. The court should have considered Mr. Mays failures to comply with court orders as a factor in making its custody decision. Mr. Mays's actions could have provided the court with valuable insight regarding his mental make-up, character, and propensities. Although a trial court possesses a great deal of discretion in its child custody decisions, we believe the court erred in precluding Mr. Mays from presenting evidence on the issue of the custody of his child.

Additionally, as this Court stated in *Gaskill*, the trial court should not make child custody decisions in order to punish one of the parents. At the opening of the trial, after the trial court granted Ms. Mays's motion to dismiss, Mr. Mays maintained that the court should hear proof on the matter before making the child custody determination. The trial court replied, "[n]o, I'm not holding it under advisement. Mr. Mays unequivocally, indubitably has had ample time and has shown

nothing but a recalcitrant attitude in that direction. And that's all that the court has to comment on that." This statement by the court indicates that the court dismissed Mr. Mays's petition for child custody in order to punish his refusal to obey court orders. The trial court has other mechanisms with which to punish a litigant who refuses to obey a court order. Additionally, a trial court should have a fully developed record upon which to base a decision in a matter of such great importance as custody of a minor child. Therefore, we reverse the court's decision on the matter, and remand to the trial court for an evidentiary hearing to determine custody, child support and visitation.

In light of our disposition of this case, Ms. Mays's issues are without merit. This is not a frivolous appeal, nor is an award of attorney's fees to Ms. Mays proper in this case.

Mr. Mays requests that we assign this cause to another judge upon remand. Mr. Mays cites Canon 2 of the Code of Judicial Conduct to support his position.[6] We disagree with Mr. Mays. The record does not suggest that the trial judge acted with impropriety.

Accordingly, we affirm in part and reverse in part the decision of the trial court. We remand the cause in order for the trial court to make a child custody determination after hearing proof on the matter. The costs of this appeal are taxed equally to both parties, Mr. Andrew Lee Mays, and his surety, and Ms. Deborah Jane Rogers Mays, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[6] Commentary in Canon 2, part A. of the Code of Judicial Conduct states that "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired."