# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 9, 2013 Session

## DAVID RAY HOGGATT v. LORI ANN HOGGATT

**Appeal from the Circuit Court for Bradley County**
**No. V11954     J. Michael Sharp, Judge**

**No. E2013-00508-COA-R3-CV-FILED-MAY 12, 2014**

D. MICHAEL SWINEY, J., dissenting.

I respectfully dissent from the majority's opinion affirming the trial court's division of the marital property as modified by the majority. I believe the evidence preponderates against the trial court's property division, even as modified by the majority, as being an equitable division of the marital property.

My disagreement with the majority concerns solely how the trial court and the majority treat the Wife's so called separate property contribution of $50,000 to the parties' mortgage. I agree completely with the majority that Wife's "annuity and the rental income from Wife's separate real estate formerly owned by her late parents were ultimately transmuted into marital property when they were put into the parties' joint checking and savings accounts . . . ." I disagree with the majority's assertion in the remainder of that sentence that "and a portion of them [Wife's separate properties] applied to reduce the mortgage on the marital home." Despite what was found by the trial court and apparently agreed to by the majority, the $50,000 payment made by the parties on the mortgage from their joint checking account was not Wife's separate property at the time the $50,000 payment was made. As found by the majority, it was marital property at that time as it already had been transmuted into marital property. In other words, Wife never made a payment of $50,000 from her separate assets on the mortgage. Despite having found that Wife's separate property had been transmuted into marital property, the majority then approves the trial court's giving Wife, in effect, a dollar-for-dollar credit as to this once $50,000 of separate property leading to the exact result as if $50,000 of Wife's separate property never had been transmuted into marital property. This results in Wife receiving over two-thirds of the marital estate with Husband receiving less than one-third of the marital estate.

In my view, this is not an equitable division of the marital estate under the evidence in this record. While it is correct under Tennessee law to consider Wife's contribution of her separate property which was transmuted into marital property, it is not equitable to give Wife what amounts to a dollar-for-dollar credit as to the $50,000 payment because it treats $50,000 of her once separate property, in effect, as if transmutation never occurred. Just as the husband in *Brock v. Brock*, 941 S.W.2d 896, 901 (Tenn. Ct. App. 1996) cited and relied upon by the majority was "not entitled to an automatic dollar-for-dollar credit against the marital estate for the value of property owned by him at the time of the marriage, but no longer owned by him at the time of the divorce," neither is Wife in this case automatically entitled to a dollar-for-dollar credit. While I am aware of Wife's separate property contribution as emphasized by the majority, I do not think this lessens the reality that what the trial court and the majority effectively did was look at $50,000 paid from the parties' joint account, marital property, on the mortgage and then give Wife a dollar-for-dollar credit as to that specific payment.

Respectfully, the scope of the majority's vision in this case is restricted to the narrow keyhole of Wife's contribution of separate property to the marriage. Wife's contribution of separate property to the marriage, while significant, is not the only relevant factor to consider in arriving at an equitable division of the marital estate. Consider the opinion of *Farnham v. Farnham,* 323 S.W.3d 129 (Tenn. Ct. App. 2009), authored by now Chief Judge Susano. One of the issues in that opinion concerned the trial court's division of the marital estate. Judge Susano wrote:

> Turning to Section 36-4-121(c), we first consider that this was a lengthy marriage of nearly 18 years. In our view, this factor would support a more equal division of the assets, as would Husband's and Wife's respective contributions to the marriage and its assets as wage-earner and homemaker respectively. Other factors including age, physical disability, employability, earning capacity, and financial need, however, would favor a greater award to Wife than Husband considering that Wife is ten years older, disabled, has not worked outside the home in over ten years, has no apparent ability to improve her economic circumstances, and has primary responsibility for raising the parties' two teenaged sons. The record does not reflect that either party brought any notable assets to the marriage or has any separate property to speak of. Lastly, with the award of the house to her, Wife assumed full responsibility for the mortgage payment. According to her income and expense statement, the house payment exceed her monthly income and, at the time of the divorce, she was experiencing a monthly shortfall of over $2,300. In our view, the overall equities between the parties supports a disproportionate award of the marital property to Wife. In short, we conclude

that the trial court did not abuse its discretion in its division of the marital property.

*Farnham*, 323 S.W.3d at 142.

My point about *Farnham* is not that it is directly on point with the facts of the case now before us. Rather, it is a good illustration of the various factors–including a spouse's disability–that can impact a decision on the equitable division of marital property. Obviously, not all of these factors are always in play in different cases, and some factors are bound to be of greater significance than others depending on the context. In the instant case, however, the majority has placed an inordinately high importance on Wife's contribution of separate property to the exclusion of other relevant factors.

Tenn. Code Ann. § 36-4-121 provides guidance here with a list of several factors to consider in making an equitable division of a marital estate. A party's contribution to the wealth of the marriage is, indeed, one factor. Tenn. Code Ann. § 36-4-121 (c)(5). This, however, is not the only factor. At least two other statutory factors are relevant here: "(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties" and "(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party." Tenn. Code Ann. § 36-4-121 (2010)(c)(2) and (3). Husband's disability implicates his physical health and weighs in favor of his receiving more of the marital estate. Husband's employability must be considered suspect, at best, given that he now relies on disability checks for income and there is no hint that his status will improve. On the other hand, Wife earned her cosmetology license in 2008. It appears from the record that Wife's bid to be a self-employed cosmetologist faltered as she took on a job at Wal-Mart to supplement her income in 2011 after the divorce was filed. Also, the Statement of the Evidence states Wife did not work from 2005 through the filing of the divorce. Nevertheless, it is noteworthy that Wife received additional job training and has shown an ability to find work. By contrast, Husband's employment prospects are low or nil.

There is no doubt that Wife's annuity contributed to the marital estate of the parties in this marriage. However, this is not the whole picture. Husband worked during the marriage until his disability rendered him unable to work. Thereafter, he drew a disability check. While Wife brought the annuity and rental income to the table, she did go for most of the marriage without working while she cared for her elderly parents and earned her cosmetology license. Caring for one's parents is a laudable endeavor, but the point is that Wife did not work continually through the whole marriage. Indeed, again, the Statement of the Evidence states that Wife did not work between 2005 and the filing of the divorce. This

is a case where consideration of all relevant factors rather than focusing on only one mandates an even division of the marital estate to achieve an equitable division.

Respectfully, the contribution of separate property is not the only relevant factor that should be considered in the division of this marital estate. Specifically, I believe other relevant factors that neither the trial court nor the majority consider are Husband's contributions to the wealth of the marital estate, Husband's disability, and Wife's having earned her cosmetology license. Other than those having been mentioned by the majority as facts, they are never discussed by the majority in its determination of what is an equitable property division. The only factor discussed by the trial court and the majority with regard to the marital property division is the parties' contribution of separate property. To ignore the other relevant factors is, I believe, error.

Then there is what is perhaps the most significant problem with the majority's decision to award Wife a lopsided portion of the marital estate on the basis of her claimed superior contributions to the wealth of the marriage: under a fair reading of the Statement of the Evidence, Husband actually contributed more money to the marriage than Wife! The majority describes the Statement of the Evidence as "woefully inadequate in many respects." Perhaps, but the Statement of the Evidence is at least sufficient to show that the lopsided award of the marital estate to Wife is not equitable. The parties married in 1999. Husband was employed at Whirlpool from 1995 until 2007. Wife worked at various places until 2004 when she quit to care for her parents. We do not know what Wife earned when she worked. We do know that Husband earned $2,000 per month while working at Whirlpool. Let us take 2004 as a starting point since the parties were more or less evenly matched until that point. Husband lost his job as a result of a disability in 2007. Thereafter he received $1,500 per month in disability insurance payments. Let us be conservative and say Husband lost his $2,000 per month salary in January of 2007; the record does not specify exactly when in 2007 that happened. For 2004, 2005, and 2006, Husband earned $72,000 from working at Whirlpool at $2,000 per month. Then let us take into account Husband's disability payments of $1,500 per month from 2007 through the December 2011 filing of divorce. Excluding that December, this yields $88,500. Under this conservative analysis, Husband would have brought $160,500 to the marriage between 2004 and 2011. This of course does not include the $6,000 from the earlier sale of Husband's mobile home, and the approximately net $3,000 he received as a result of first receiving Social Security back pay and then subsequently having to repay much of that to his disability insurer. According to this record, Husband earned or drew at least $160,000 in this 2004-2011 period. As for Wife, the record states that she did not work from 2005 through the filing of the divorce. The record also states that Wife stopped working in 2004 to care for her parents. The only money from Wife that we have evidence for from the 2004-2011 span is from the annuity and rental income. The majority places this figure at $119,000–that is, $80,000 from the annuity, and $39,000 from

the rental income. Even if one accepts for the sake of argument that Wife worked until the very end of 2004, one is hard-pressed to see how she could have contributed as much, let alone more, money to this marriage than Husband did.

I also should add at this point that the majority only assumes that Wife did not split the rental income with her sister. Perhaps Wife's contribution was even less than is believed by the majority. At any rate, we must stick to the record as closely as possible and not speculate. For 2004-2011, Husband contributed at least $160,000 to the marriage from his job and then disability, while under the majority's figures the Wife contributed $119,000. Husband has earned and drawn a modest sum steadily throughout the marriage. This adds up, and I submit it is just as much a contribution as money from an inherited annuity or rental income that is perhaps more concentrated in time and thus appears more impressive. Additionally, how do we know how the parties saved and spent their money? Perhaps the parties lived on Wife's money and saved Husband's salary or disability benefits. The majority states that Wife's contribution of separate property in the amount of $119,000–beginning in around 2006–played a major role in the parties' accumulation of a $139,420 marital estate. This is true, but Husband added at least $160,000 to the marriage from 2004 until the filing of the divorce. Meanwhile, Wife did not work from 2004-2005 until the filing of the divorce in late December 2011. With great respect to the majority, why should Wife be awarded a larger share of the marital estate on the basis of her contributions to the wealth of the marriage when a fair reading of the record shows that Husband contributed *more* to the wealth of the marriage than Wife?

I believe the evidence preponderates against the trial court's division of the marital estate, as modified by the majority, as being an equitable division of the marital estate. I find nothing in the evidence to support a finding that an equitable division of this marital estate is for Wife to receive over two-thirds of the marital property. Here, the disabled spouse under the majority's opinion receives less than one-third of the marital property while the spouse who is not disabled and owns rental property receives over two-thirds of the marital property. I believe that considering all relevant factors including the parties' financial contributions to the marital estate, Husband's disability, Wife's not working during most of the marriage, Wife's post-divorce ability to work, and Wife's ownership of rental property, an equitable division of this marital estate would be for Husband and Wife each to receive fifty percent (50%) of the entire marital estate. For this reason, I respectfully dissent from the majority's opinion.

_____
D. MICHAEL SWINEY, JUDGE